PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* JUNTA ADMINISTRATIVA DEL MUELLE MUNICIPAL Y MALECÓN DE PONCE ET AL., Respondents.

No. 21. Argued February 10, 1950.—Decided March 31, 1950.

144

*Vicente Géigel Polanco*, Attorney General, *A. Torres Braschi*, Assistant Attorney General, and *Hiram R. Cancio Villella*, counsel for the Labor Relations Board, for petitioner. *Erasto Arjona Siaca* for respondents.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The Labor Relations Board of Puerto Rico entered an order requiring the *Junta Administrativa del Muelle Municipal de Ponce* and the *Junta Administrativa del Negociado de Lanchas, Ancones y Malecón de Ponce* to bargain collectively with a certain union. The employers failed to comply with this order . The Labor Board thereupon filed the present petition in this Court to enforce its order pursuant to § 9 (2) (*a*) of Act No. 130, Laws of Puerto Rico, 1945, as amended by Act No. 6, Laws of Puerto Rico, 1946, hereinafter referred to as the Act.

The respondents make two contentions: (1) the Labor Board has no jurisdiction over them because they are engaged.

in interstate commerce and are therefore subject to the Taft-Hartley Act; (2) even if they are not covered by the Federal Act, they are not employers within the meaning of § 2(2) and (11) of the Act and are therefore not subject to the Act.

■ The first contention of the respondents needs little discussion. The Taft-Hartley Act, in § 2(2), 29 U.S.C. § 152(2), specifically exempts from its operations in sweeping fashion "the United States or any wholly owned Government corporation . . . or any State or political subdivision thereof . . .". Unlike our Act, it does not except from this exemption corporate instrumentalities of local governments. The respondents are clearly not subject to the Federal Act, by virtue of § 2(2). Consequently, the insular Legislature was empowered to include them under our Act. *Asociación de Empleados de la Bayamón Transit Co., et al.,* v. *Labor Relations Board,* 70 P.R.R. 273. The only substantial question in the case therefore is whether the respondents are correct in their second contention; namely, that the Legislature did not intend that they be subject to the Act.

■■ Section 2(2) of the Act provides that: "The term 'employer' shall include executives, supervisors and any person who carries on activities of an executive nature directly or indirectly in the interest of an employer, but shall not include, (except for corporate instrumentalities or the Government of Puerto Rico as hereinafter defined) the Government or any political subdivision of the same . . .".

Section 2(11) provides that: "The term 'corporate instrumentalities' refers to the following corporations which have properties belonging to or are controlled by the Government of Puerto Rico: The Land Authority, the Agricultural Company, the Development Bank, the Water Resources Authority, the Puerto Rico Development Company (Industrial Development Company), the Transportation Authority, the Communications Authority, and the subsidiaries of such corporations, and shall also include such similar enterprises and their subsidiaries as may be established in the future, as well

as such other government agencies as are engaged or may hereafter engage in lucrative business or activities for pecuniary profit."

The controversy here revolves around whether the respondents are included within the clause, "such other government agencies as are engaged or may hereafter engage in lucrative businesses or activities for pecuniary profit." The Labor Board argues that it found as a fact that the respondents were government agencies operating for profit, and that as the record contains evidence which supports this alleged finding of fact, we cannot disturb it under § 9 (2) (b) of the Act, citing Labor Relations Board v. Namerow, 69 P.R.R. 77; Rivera v. Labor Relations Board, 70 P.R.R. 5. But there is no dispute here as to the facts. The only question is whether under the uncontroverted facts the respondents as a question of law are covered by the Fact. To say that this is a question of fact would be to empower the Board to decide what § 2 (2) and (11) mean and to determine its own jurisdiction. But in those cases where the Act gives us jurisdiction to review decisions and orders of the Board, the Act vests us, not the Board, with the power to give the final answer on questions of law. Such questions are, of course, decided in the first instance by the Board. And, as a specialized agency dealing daily and exclusively with these problems, its views are entitled to great weight and respect. But so long as the Legislature imposes on this Court the duty to review the Board's decisions on legal questions, we must on final analysis exercise our independent judgment thereon.

The *Junta Administrativa del Muelle Municipal de Ponce* came into existence by virtue of a 1911 Ordinance, approved by the Executive Council and the Governor, whereby the Municipality of Ponce was granted a franchise to construct and operate a public pier in Ponce. The Ordinance provided in § 9 that the pier "shall be managed by a board . . . . [which] shall have powers and duties similar to a board of directors in an ordinary commercial corpora-

tion . . .". Section 9 goes on to provide as follows: "The net receipts from the operation of the wharf, pier and warehouse, after paying salaries and operating expenses, shall be set aside by the board of management and the municipal treasurer to pay the annual interest and establish the annual proportion of the sinking fund of the municipal loan effected from The People of Porto Rico, for the purpose of building and constructing this improvement, and after such application to pay interest and establish the sinking fund then the board of management, with the approval of the municipal council, may apply such portion of the balance remaining as may be necessary for the repair and upkeep of the pier and appurtenances thereto, and to removing any obstacles to the free use of the pier. After such application has been made, the remainder shall be placed at the free disposal of the municipal council and shall be lawfully applied and expended in such other city improvements as may be deemed necessary." See *Administrative Bd. of Pier* v. *P. R. American Sugar Refinery Co.*, 70 P.R.R. 338.

The *Negociado de Lanchas, Ancones y Malecón* was created by a 1942 Municipal Ordinance of Ponce. This Ordinance provided that it shall function in the same way as the *Junta de Muelle* with the same powers and with the same tariffs as charged by the *Junta de Muelle*. And the Ordinance creating the latter authorized it to hire personnel and fix their compensation as in its judgment may be necessary.

We think these provisions amply demonstrate that the respondents are "government agencies which are engaged or may hereafter engage in lucrative businesses or activities for pecuniary profit" It must be remembered that in § 2(11) the Legislature was using the terms "lucrative businesses" and "pecuniary profit" in a special sense. Obviously, it did not mean that the profits must redound to someone for his personal benefit. No government agency could legally ever make "profit" in that sense, and to read § 2(11) in that way would

make it meaningless. *Cf. Government of The Capital* v. *Executive Council,* 63 P.R.R. 417. Rather we think the Legislature intended to distinguish between the traditional services furnished to the public by the government, such as health, police, fire, or schools, where little or nothing is paid by the beneficiaries, as contrasted with such services as transportation, electricity and water where the consumer is supposed to pay substantially what the service is worth, even though it be public in nature. Obviously, the operations of the respondents fit into the latter category. *Cf. Tulier* v. *Land Authority,* 70 P.R.R. 249; *Buscaglia, Treas.* v. *Tax Court,* 66 P.R.R. 623; *La Costa Jr.* v. *District Court,* 67 P.R.R. 158; *People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F.2d 316, 325 (C.A. 1, 1946).

The fact that due to low rates or other reasons the respondents have generally lost money on their operations does not affect the question of their coverage under the Act. The important thing is whether their authority and the nature of the services they render enable them, if they choose, to operate in a manner comparable to private enterprises which might engage in the same business. We think the respondents meet this test in the same way as the government instrumentalities specifically listed in § 2(11).

We are not impressed with the argument that § 2(11) was intended to include only instrumentalities of the insular government and not agencies like the respondents, which are instrumentalities of a municipality. We can discern no such intention from the clear and sweeping language of § 2(11). In referring to "other government agencies" in this context, we think the Legislature meant to include every operation within the ambit of the entire Government of Puerto Rico which met the test of operating for profit as therein defined. See *People ex rel. Castro* v. *Padrón,* 60 P.R.R. 777; *Government of The Capital* v. *Executive Council, supra.* Even if this were not so clear as it is on the face

of the statute, the manner in which the Legislature amended the statute in 1946 would make it manifest.[1]

A judgment will be entered enforcing the order of the Labor Relations Board.

---

[1] Section 2(11) replaced § 2(13) of Act No. 130 of 1945, which read as follows: "The term 'corporate instrumentalities' refers to proprietary corporations owned or controlled by the Government of Puerto Rico, including the Land Authority, the Industrial Company, the Agricultural Company, the Development Bank, the Water Resources Authority, the Isabella Irrigation Service, the Transportation Authority, the Communications Authority, the Aqueduct and Sewerage Service, similar enterprises hereafter created, and all subsidiaries of such enterprises."